O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO S. S.,<br>By Brenda Ramirez, Conservator of Person and Estate,[1]<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[2]<br><br>Defendant. | Case No. 2:17-cv-05928-KES<br><br>MEMORANDUM OPINION AND ORDER |

---

[1] The Plaintiff and real party in interest is claimant Ernesto S. S. His mother, Brenda Ramirez, assisted him by retaining counsel to represent him. Ms. Ramirez was granted a limited conservatorship by the California courts that does not include the power to sue on Plaintiff's behalf but does include the power to contract on Plaintiff's behalf. (Dkt. 46 [supplemental brief on standing].) Plaintiff makes a conclusory argument that Plaintiff must be disabled because of this conservatorship, because Plaintiff cannot contract without his conservator and procuring employment requires contracting. (See JS at 5.) The Court does not see this limited conservatorship alone as supporting a finding that Plaintiff is disabled. Plaintiff has not cited any Social Security regulations discussing a person's legal ability to contract for employment as a determining factor.

[2] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

# I.
# BACKGROUND

In April 2013, Ernesto S. S. ("Plaintiff") filed an application for Supplemental Security Income ("SSI") alleging a disability onset date of March 26, 2013. Administrative Record ("AR") 194. On January 7, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did his mother, father, and a vocational expert ("VE"). AR 36-101.

On February 24, 2016, the ALJ issued a decision denying Plaintiff's application. AR 20-29. The ALJ found that Plaintiff suffered from the medically determinable severe impairment of autism spectrum disorder ("ASD"). AR 22. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but with the following non-exertional limits: "He is limited to occasional and superficial contact with the public with few changes in a routine work setting, defined as work that is generally the same every day, with slowly implemented changes to work routines." AR 24.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could work as a dishwasher, hand packager, and machine cleaner. AR 28-29. The ALJ concluded that Plaintiff was not disabled. AR 29.

# II.
# STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

### III.
### ISSUES PRESENTED

Issue One: Whether the ALJ erred in evaluating the medical evidence.

Issue Two: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.

Issue Three: Whether the ALJ erred in evaluating the lay witness testimony of Plaintiff's parents.

Issue Four: Whether the ALJ erred in determining Plaintiff's RFC.

Issue Five: Whether the ALJ erred in posing hypothetical questions to the VE or evaluating the VE's testimony.

(Dkt. 43, Joint Stipulation ["JS"] at 3.)

# IV.
# DISCUSSION

A. **ISSUE ONE: The ALJ's Evaluation of the Medical Evidence.**

    **1. The ALJ's Treatment of the Medical Opinion Evidence.**

Four doctors offered opinions concerning Plaintiff's mental functioning: (1) treating psychologist Dr. Agamyan, (2) consultative psychologist Dr. Riahinejad, and (3) state reviewers Dr. Insinna and (4) Dr. Davis.

The ALJ gave each of these medical sources the following weights:

> I give great weight to the opinions of the State Agency medical consultant's that the claimant remains able to perform work with gradual changes in the work setting and limited public contact (AR 109-11 and AR 121-23). The consultants have an understanding of the Social Security disability program requirements, and their assessments are consistent with the record as a whole.
>
> I also give great weight to the opinion of the consultative psychologist that the claimant could have mild to moderate difficulty understanding, remembering and carrying out complex and detailed instructions, and difficulty relating with other people (AR 503). The doctor examined the claimant personally and reviewed earlier medical records, and his assessment is generally consistent with the longitudinal record.
>
> In addition, I give great weight to the February 25, 2014 opinion of Ruzanna Agamyan, Ph.D., that the claimant should continue participating in his university courses and will benefit from future employment (AR 563). Notably, Dr. Agamyan did not state that claimant would require sheltered work or other accommodations inconsistent with competitive work. The doctor made her recommendations after a thorough evaluation of the claimant, and her

assessment is supported by the global record.

AR 26.

### 2. Discussion of Claimed Errors.

Plaintiff argues that while the ALJ claims he gave great weight to all the medical opinions of record, in fact, he "rejected" significant portions of each one by not including a related restriction or accommodation in the RFC, and he failed to give specific, legitimate reasons for these partial rejections. (JS at 8-9.) Plaintiff argues that the ALJ should have included the following restrictions in his RFC or stated a reason for rejecting the corresponding medical opinion: (1) some limitation on interactions with supervisors and coworkers, (2) some provision for receiving assistance dressing, (3) some provision for receiving vocational training and using a job coach, (4) some allowance for spending time at work off-task, and (5) special prompting to "follow time limits at work." (JS at 13.)

### a. Interactions with Coworkers and Supervisors.

In the RFC, the ALJ limited Plaintiff to "occasional and superficial" public contact but did not limit Plaintiff's potential interaction with supervisors and coworkers. AR 24. Plaintiff argues that the failure to do so was legal error based on the medical evidence. (JS at 13.)

Dr. Insinna opined, "When it comes to coordinating work projects with others, [Plaintiff] may be unable to read the cues offered by others and/or unable to identify or interpret emotional cues in self and others; thus, contributing to moderate limitations in working with others." AR 110. Dr. Insinna found that Plaintiff would have "moderate" limitations interacting appropriately with the general public in maintaining socially appropriate behavior. Id. Plaintiff, however, was "not significantly limited" in his ability to respond appropriately to criticism from supervisors and to get along with coworkers. Id. Dr. Insinna wrote, "At times his behavior may seem unusual to others until they get to know him." Id. She concluded, "this claimant has moderate limitations in most areas that have

some intrapersonal component." AR 111.

Dr. Davis agreed that Plaintiff has moderate difficulties in maintaining social functioning. AR 119. He found that the medical evidence of record supported a finding that Plaintiff could work with "limited public contact." AR 118. He adopted Dr. Insinnia's findings. AR 122.

Per Dr. Agamyan, Plaintiff "has acquaintances but no friends and meets with these acquaintances regularly." AR 562. "He may have difficulty understanding hints or indirect cues in conversations." Id. "He seldom engages in collaborative play." Id. Nevertheless, he "plays group games," "accepts helpful suggestions from others," and "does not tease or bully others." Id. Dr. Agamyan concluded that Plaintiff had "mild to moderate difficulties" in the areas of social/emotional understanding and relating to people. Id. Plaintiff's composite "adaptive behavior" score indicated "low, mild deficit." AR 564.

In a form declaration, Dr. Agamyan marked "no apparent impairment" in 15 cognitive, functional areas, "moderate impairment" in 2 areas (i.e., concentrating and reasoning logically) and "major impairment" in 1 area (i.e., ability to plan, organize, and carry out actions). AR 604. Dr. Agamyan noted that Plaintiff pervasively displayed an inappropriate emotional state, showing "mildly" inappropriate anger and panic and "moderately" inappropriate anxiety and fear. AR 605.

Dr. Riahinejad observed that during their appointment, Plaintiff could "relate in a pleasant and cooperative manner." AR 499. He opined that Plaintiff "could have difficulty relating with other people due to his autism." AR 503.

The opinions offered by Drs. Insinna and Davis are not internally inconsistent. They found Plaintiff would have moderate difficulty responding appropriately to the public, but no significant difficulty responding to coworkers and supervisors, consistent with their observation that Plaintiff's mildly inappropriate behavior seemed less odd to people who got to know him. AR 110,

122. This is consistent with Dr. Agamyan who generally assessed Plaintiff's social impairments as being only "mild to moderate." AR 562. Plaintiff recurrent mild or moderate displays of inappropriate emotions (AR 605) would have less import to coworkers or supervisors who were familiar with him than to members of the public.

In sum, Plaintiff has not demonstrated that the ALJ committed legal error in weighing the medical evidence on this topic or by failing to limit Plaintiff's work-related interactions with his coworkers or supervisors.

### b. Assistance Dressing.

Dr. Agamyan found that Plaintiff "requires assistance when choosing weather appropriate clothing" but is "independent with dressing." AR 561. Plaintiff told Dr. Riahinejad that "he does not need help with dressing." AR 500. His Function Report states that he can dress himself, but his mother picks out his clothes.[3] AR 244. Plaintiff argues that the ALJ was required to address, but failed to address, "whether he requires assistance and prompting when choosing his work clothes." (JS 13.)

Neither party has cited any evidence in the record that Plaintiff ever went to classes or other public activities wearing clothing inappropriate for the weather or inappropriate for some other reason. That Plaintiff, without assistance, might choose to wear a short-sleeved shirt on a cool day or wear an outfit that does not match would not impair his ability to work as dishwasher, hand packager, or machine cleaner. Plaintiff has failed to demonstrate legal error.

### c. Vocational Training and Job Coaching.

Dr. Agamyan opined, "In the future, Plaintiff will benefit from employment.

---

[3] It is unclear who wrote the Function Report. Page one refers to Plaintiff using the first-person pronoun "I," but page two refers to Plaintiff as "my son" and "he."

7

Possibly, initially, he should start with a vocational training and work with a job coach." AR 563. Plaintiff contends that this is an opinion (which the ALJ unjustifiably rejected) that Plaintiff can only work in a sheltered environment. (JS at 23.)

Dr. Agamyan expressed an opinion about what would be beneficial to Plaintiff – not necessary – for him to work in a competitive environment. This is not an opinion about Plaintiff's functional capacity. In any event, Plaintiff's household chores already include washing dishes daily (AR 191), making it implausible that he could not work competitively as a dishwasher without vocational training. It is Plaintiff – not the ALJ – who misconstrued Dr. Agamyan's opinion.

### d. Allowance for Time Off-Task.

The VE testified that a person with Plaintiff's RFC who took one unscheduled five-minute break per hour could not maintain competitive employment. AR 99. The VE also testified that such a person could not work if he were off-task 15% of the day. Id. Plaintiff argues that the ALJ erred in evaluating the medical evidence by not including in his RFC any allowance for time off-task. (JS at 24-25.)

The medical opinion evidence on Plaintiff's ability to maintain attention and persistence is as follows:

• <u>Drs. Insinna and Davis</u>: They opined that he was "not significantly limited" in his ability to maintain attention and concentration for extended periods. AR 109, 121. Plaintiff's success in college showed that he could "maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and … sustain a routine without special supervision." AR 110, 122. Nevertheless, he was moderately limited in his ability to complete a normal workday or workweek without unreasonable number of rest periods. Id. They further opined that he "would have moderate limitations in his

ability to work a full workday or workweek … especially when starting a new job." Id.

  • Dr. Riahinejad: He found Plaintiff's "concentration and attention span" to be "variable." AR 501. He concluded that Plaintiff could understand, remember and carry out simple and repetitive instructions, and that when carrying out such tasks, his "pace is appropriate." AR 503.

  • Dr. Agamyan: She observed that Plaintiff could listen to informational talk or a story for at least 15 to 30 minutes. AR 561. He could read at a 9th-grade level. Id. She rated Plaintiff's ability to "attend and concentrate" as moderately impaired. AR 604. She opined that Plaintiff's impairments do not vary substantially in frequency, severity, or duration. AR 605. She concluded that Plaintiff would benefit from continuing his university education and obtaining employment. AR 563.

  Thus, none of the medical sources opined that Plaintiff would require unscheduled breaks every hour or be off task 15% of each workday. Dr. Riahinejad specifically found that Plaintiff could do simple, repetitive tasks with appropriate pace (AR 503), and all the jobs proposed by the VE have a specific vocational preparation ("SVP") rating of 2 which is consistent with simple repetitive work. See Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D.Cal. 2005) (reasoning SVP 2 did not conflict with ALJ's prescribed limitation of "simple, repetitive" tasks). Dr. Agamyan opined that Plaintiff would benefit from employment (AR 563), such that her opinions cannot be reasonably construed as limiting Plaintiff to work-preclusive conditions, such as the ability to take numerous, unscheduled breaks or spend 15% of the workday off-task. Plaintiff has not demonstrated legal error.

    e. Extra Prompting to Follow Time Limits.

  Plaintiff contends that the ALJ should have interpreted the medical evidence to show that he can only "follow time limits at work" with special assistance or

prompting. (JS at 13.) The medical evidence relevant to this topic is as follows:

- Drs. Insinna and Davis: They opined that Plaintiff was "not significantly limited" in his ability to perform activities within a schedule and be punctual within customary tolerances. AR 109, 121-22. Similarly, he was not significantly limited in his ability to sustain an ordinary routine without special supervision. AR 109, 122. Nevertheless, he "would have moderate limitations in his ability to work a full workday or workweek … especially when starting a new job." Id.

- Dr. Riahinejad: Plaintiff could understand, remember and carry out simple and repetitive instructions, and when carrying out such tasks, his "pace is appropriate." AR 503.

- Dr. Agamyan: Plaintiff "engaged readily" in the tests she administered. AR 560. He understood the function of a clock but reported having difficulties obeying time limits. AR 561. He had "significant difficulty tolerating changes in his routine and transitioning from one activity to another." AR 562. He had "major impairment" in his ability to plan, organize, and carry out actions, defined as the "inability to break complex tasks down into simple steps and carry them out." AR 604. Again, she opined that Plaintiff would benefit from employment. AR 563.

After considering these medical opinions, the ALJ did not find that Plaintiff could work a normal work environment. Instead, the ALJ limited Plaintiff to unskilled work in an environment that is "generally the same every day, with slowly implemented changes to work routines." AR 24. Plaintiff has not cited medical opinions that in such an environment, Plaintiff would be unable to function satisfactorily without special prompting to maintain the required schedule. Plaintiff, therefore, has again failed to demonstrate legal error.

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (JS at 26-36.)

**1. Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163

& n.9 (9th Cir. 2014).

**2. Plaintiff's Testimony.**

Plaintiff testified that when he sits at a desk for an hour, anxiety hits a peak and he loses a sense of what is going on. AR 50. He did not "do very well" in managing his own finances. AR 54. He believed that his inability to adhere to schedules and perform under "constant pressure" prohibited him from working. AR 55-56. He reported a very short memory span and getting distracted too easily to work. AR 57. If his schedule or routine changed, he became frustrated, blanked out, and experienced anger lasting for one to three days. AR 63-64. He would forget his primary objective of walking to a corner grocery store if he had to do it alone. AR 65.

**3. ALJ's Reasons for Discounting Plaintiff's Testimony.**

The ALJ gave four reasons for discounting Plaintiff's subjective symptom testimony: (1) the objective medical evidence was inconsistent with Plaintiff's allegations; (2) Plaintiff's overall treatment history was inconsistent with his allegations; (3) Plaintiff's reported daily activities were inconsistent with his allegations; and (4) Plaintiff's overall demeanor at the hearing was inconsistent with his allegations. AR 25-26.

a. Objective Medical Evidence.

The ALJ noted that despite being a Regional Center consumer since 1999, Plaintiff had not received any services to address intellectual or behavioral issues. See AR 25, 276-339. At a November 15, 2013 evaluation, Plaintiff's mental status and intellectual functional were within normal/average limits. AR 25, 500-02. A February 2014 psychological evaluation concluded that Plaintiff had no intellectual or language impairments, and that his non-verbal intelligence fell within the average range. AR 25, 562-63. The examination reflected borderline functioning in adaptive communication that was typical of individuals with autism, but found no behavioral issues. AR 25, 563.

In response, Plaintiff cites records demonstrating that he is autistic. (See JS at 26-27.) The ALJ concluded that Plaintiff had the severe impairment of ASD and accounted for the resulting limitations in the RFC. Plaintiff also cites medical opinions discussed above (see JS at 27-31), but as discussed herein, the RFC adequately accounted for these opinions. Last, Plaintiff cites to "services to assist" given by a Regional Center. See JS at 26 (citing AR 356-58, 401-08, 416-24). The word "services" is vague, but the cited records reflect "individual program plans" for Plaintiff that set out goals and strategies; few meetings are reflected and they take place years apart and stop in 2012. Later in the Joint Stipulation, Plaintiff implicitly concedes the ALJ's point. See JS at 28, 32 (criticizing ALJ's reasoning by arguing, without citation, that autism is not ameliorated or treated by behavioral or intellectual training).[4]

The ALJ did not conclude that Plaintiff's autism would not affect his functioning. Rather, the ALJ concluded that the objective medical evidence did not support the severity of his alleged symptoms. Given the evaluations performed in November 2013 and February 2014, the Court agrees.

      b. Treatment History.

The ALJ noted that Plaintiff had received treatment mostly for his diabetes, not for his ASD. See AR 25. The ALJ also noted that Plaintiff had obtained a high school diploma, attended college full-time with passing grades in most classes, improved his grades, and attended Pasadena City College part-time with accommodations, without any evidence that he received therapies to improve functioning. AR 25 (citing AR 237-38, 557-58, 273-76). This conservative treatment is inconsistent with Plaintiff's allegations of severe functional limitations that prevent him from working.

---

[4] Later in the JS, Plaintiff argues that studies of ASD "show measurable benefits from intensive, behaviorally based approaches." (See JS at 32.)

13

In response, Plaintiff cites the same records related to "services" given to Plaintiff by the Regional Center. See JS at 32 (citing AR 256-58, 401-08, 416-24.) Again, these records do not reflect anything more than minimal services provided to Plaintiff for behavioral or intellectual functioning. Plaintiff participated in "Friends at Play" between July 2010 and May 2011, see AR 406, but it is does not appear that these sessions of social skills continued. Plaintiff's mother mentioned at the hearing a behavioral therapist provided by the Regional Center, but on further questioning by the ALJ, it appeared that the behaviorist may not have been provided by the center and only assisted Plaintiff for a year in 2008. See AR 75-80. Even if the ALJ inaccurately described Plaintiff as receiving "no" services from the regional center, it was accurate to conclude that Plaintiff received conservative, minimal treatment for his autism-related limitations.

The ALJ thus gave two clear and convincing reasons for discounting Plaintiff's testimony, and the Court declines to address his remaining two reasons. The Court also notes that the ALJ's RFC did take into account Plaintiff's main ASD limitations—i.e., limiting him to occasional and superficial contact with the public with few changes in a routine work setting.

## C. ISSUE THREE: Lay Witness Testimony.

Plaintiff argues that the ALJ erred in discounting the testimony of Plaintiff's mother and father. (See JS at 46-50.)

### 1. Law.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1053); see also 20 C.F.R. § 416.913(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). When rejecting the testimony of a lay witness, an ALJ must give specific reasons germane to that witness. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d

685, 694 (9th Cir. 2009).

### 2. ALJ's Treatment of Plaintiff's Parents Testimony.

The ALJ gave the testimony of Plaintiff's parents "limited weight." AR 27. The ALJ stated that his most important reason for doing so is that their statements were not "fully consistent with the medical opinions and other evidence." Id. The ALJ also gave examples of instances when he found Plaintiff's parents' testimony to be exaggerated or unsupported. Id. He noted that while they described Plaintiff as having "tantrums," those incidents "amounted to occasional conflicts with them over what claimant wanted to do, which seems age-appropriate." Id. "They were unable to cite to any examples of conflicts with people in the community." Id. "Similarly, when asked to describe claimant having difficulty handling money, the main example his mother cited was the claimant sometimes paid for his friends' food if they had no money. Although mother thought this demonstrated people taking advantage of her son, it actually demonstrated his strong social skills and ability to go out independently, and was a fairly typical anecdote about a teenager." Id. Last, the ALJ noted that the parents' testimony was "colored by affection for him." Id.

### 3. Analysis.

The ALJ gave germane reasons for giving limited weight to Plaintiff's parents' testimony. First, a lay witness's close relationship with and desire to help a claimant can be a basis for rejecting testimony. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). Also, the testimony was inconsistent with medical opinions and other evidence. For example, Plaintiff's mother testified that Plaintiff gets distracted too easily to work. AR 71. Plaintiff's father testified to the same. AR 90. Drs. Insinna and Davis opined that Plaintiff was not significantly limited in his ability to maintain attention and concentration for extended periods. AR 109, 121. Both parents testified that Plaintiff got angry at them in public, but they could not provide details of recent, public incidents. AR 94, 96. Neither described

15

any incident in which Plaintiff expressed inappropriate anger to someone other than themselves, such as a teacher or store clerk.  Treating psychologist Dr. Agamyan reported that Plaintiff "sometimes has difficulty controlling his anger, but he does not have temper problems."  AR 562.  She also reported, "Overall [Plaintiff] is a pleasant young man with no behavioral issues."  AR 563.  Last, Plaintiff's mother testified, "If he goes out with a friend to eat, if the friend says, 'I don't have any money – can you pay for me?' Ernesto always … pays without even notice – you know that probably the friend had money."  AR 85-86.  Dr. Riahinejad opined that Plaintiff is capable of managing funds on his own behalf.  AR 503.  Combined, these were germane reasons for discounting Plaintiff's parents' testimony.

D. **ISSUE FOUR:  The ALJ's RFC Determination.**

    **1. Summary of Claimed Errors.**

First, Plaintiff argues that the ALJ should have credited all the opinions of Dr. Agamyan and incorporated related restrictions into his RFC determination.  (JS at 55-56.)  The ALJs evaluation of Dr. Agamyan's opinion evidence is discussed above in Issue One.

Second, Plaintiff argues that the ALJ should have credited his subjective symptom testimony and incorporated restrictions based on that testimony into his RFC determination.  (JS at 55-56.)  The ALJ's evaluation of Plaintiff's subjective symptom testimony is discussed above in Issue Two.

Lastly, Plaintiff argues that the ALJ should have incorporated limitations in the RFC to accommodate his Type 1 diabetes, as follow:

> The ALJ discusses [Plaintiff's] Type 1 diabetes but does not address the need for assistance throughout the day when checking his blood sugar or when obtaining insulin from his implanted pump.  Both [Plaintiff] and his mother testified that she checks his blood sugar, programs the carbohydrates, and pushes the button to release the

insulin.  Without such assistance, or break periods to obtain such
assistance, [Plaintiff] would face a serious life-threatening crisis.

(JS at 57.)

In support of this argument, Plaintiff cites the following pages of the administrative record (JS at 26, 47):

- <u>AR 83-85, 94</u>:  Plaintiff's mother testified that she shadows him at university; she checks on him every one or two hours.  She brings him lunch every day because she needs to count the carbohydrates.  She operates his insulin pump and has not successfully taught Plaintiff how to do so, despite years of trying.  Plaintiff has problems with his blood sugar dropping too low almost every day.
- <u>AR 284-85</u>:  Plaintiff's individualized education plan at California State University Northridge included as a goal acquiring the skills needed to manage his diabetic needs.  It also included a statement by Plaintiff's mother describing her role since his childhood in managing his diabetes.  For example, Ms. Ramirez stated, "[Plaintiff] often times pretends to have check[ed] his sugar levels; however mother has noticed that he really has not done it."  AR 284.
- <u>AR 400</u>:  In March 2007 (i.e., when Plaintiff was 13), Dr. Lavin wrote a letter requesting that Plaintiff's instructional aid complete a daily activity log describing his physical activity, water intake, restroom visits, etc., to "better understand" his blood sugar levels and assist his parents in giving him "the proper doses of insulin."

Defendant's arguments regarding Issue Four do not mention diabetes.  (JS at 58-59.)  Defendant contends that Plaintiff has not challenged the ALJ's determination that his diabetes was non-severe.  (JS at 14 n.1.)

### 2. The ALJ's Assessment of the Functional Limitations Caused by Plaintiff's Diabetes.

At step two of the sequential evaluation process, the ALJ found that Plaintiff's diabetes is non-severe, as follows:

The claimant also alleges that he is limited in his ability to work by diabetes. Although the record shows he has diabetes mellitus, his diabetic needs are well-managed (see, e.g., AR 278 [1/8/15 record stating "his diabetic needs are well-managed], AR 425-98 and AR 506-52 [medical records]). As there is no evidence it causes significant functional limitation, it is non-severe.

AR 22.[5]

Based on this finding, the ALJ did not include in his RFC assessment any accommodations for Plaintiff's diabetes, such as the ability to take short, scheduled breaks to check his own blood sugar or meet with his mother or a health aide who would do so.[6]

### 3. Analysis.

The Social Security Regulations require ALJs to consider limitations caused by all medically determinable conditions, whether severe or non-severe, when assessing a claimant's RFC. See 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your residual functional capacity."). An ALJ errs, therefore, if he or she explicitly neglects to consider a non-severe impairment that causes functional limitations when assessing the RFC. Jones v. Berryhill, No. EDCV 17-1138-AS, 2018 U.S. Dist. LEXIS 138383, at *5 (C.D. Cal. Aug. 15, 2018). Moreover, "because a person's ability to engage in gainful employment is dependent upon both physical and psychological capabilities, … [a] claimant's illnesses must be considered in

---

[5] Plaintiff claims that the ALJ found his diabetes to be a severe impairment at Step 2, citing AR 18. (JS at 57.) The ALJ did not make such a finding, and AR 18 is not part of the ALJ's written decision.

[6] It is unclear how often Plaintiff must check his blood sugar or operate his insulin pump; perhaps this could be done during regular employment breaks.

combination and must not be fragmentized in evaluating their effects." Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir. 1987) (citations omitted).

Substantial evidence supports that ALJ's finding that Plaintiff's diabetes was well-managed at the time of the hearing and therefore did not create physical functional limitations. The ALJ did not consider, however, what measures were required to keep Plaintiff's diabetes well-managed, such as receiving regular assistance to check his blood sugar or select his food, and whether those measures would more than minimally affect his ability to maintain fulltime, competitive employment. While persons with no mental impairments might be able to manage their diabetes by checking their own blood sugar and adjusting their insulin pumps during regular work breaks, Plaintiff has ASD. His mother testified that because of his ASD, he is unable to prompt himself to check his blood sugar when required, learn to operate his insulin pump, or make appropriate meal choices independently.

If the continued management of Plaintiff's diabetes would require that he receive assistance during the workday, then that assistance (depending on its nature and frequency) could impact his ability to maintain competitive employment. The ALJ, therefore, erred in not either (1) including some accommodation(s) for diabetes management in Plaintiff's RFC, or (2) discussing why the evidence did not support the inclusion of such accommodations. This error was not harmless. See Bray v. Comm'r of SSA, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (holding that courts may review the ALJ's decision only based on reasoning and findings of ALJ).

E. **ISSUE FIVE: The ALJ's Vocational Analysis.**

Plaintiff's arguments regarding the ALJ's hypotheticals to the VE mirror his arguments above. (See JS at 60-61.) To the extent the ALJ alters the RFC on remand, the ALJ should pose amended hypotheticals to a VE.

//
//

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REMANDING the decision of the Commissioner denying benefits.

DATED: January 22, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge